IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CV-432-FL

| | | |
|---|---|---|
| CHARLENE R. MILLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM &** |
| | ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, | ) | |
| ACTING COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Charlene R. Mills ("Plaintiff") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability and disability insurance benefits. The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings [DE-36] be denied, Defendant's Motion for Judgment on the Pleadings [DE-39] be granted, and the agency's final decision be upheld.

## STATEMENT OF THE CASE

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on November 29, 2011, alleging disability beginning April 26, 2011. (Tr. 13.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (*Id.*) On December 7, 2012, a hearing was held before Administrative Law Judge Mason Hogan ("ALJ"), who issued an unfavorable ruling on January 11, 2013. (*Id.*) Plaintiff's request for

review by the Appeals Council was denied March 19, 2013, making the ALJ's decision the final decision of the Commissioner. (Tr. 1.) Plaintiff now seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "'In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner].'" *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in

substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of her past work; and, if not, (5) based on the claimant's age, work experience and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 74 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.*

### III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found Plaintiff was not engaged in substantial gainful employment since April 26, 2011, the date of alleged disability. (Tr. 15.) Next, the ALJ determined Plaintiff has the following severe impairments: degenerative disc disease, obesity, patellofemoral syndrome of both knees, urinary stress and urge incontinence; left shoulder strain, ganglion cyst, posttraumatic stress disorder, and depression. (*Id.*) However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"), and found that Plaintiff has the ability to perform medium work subject to the following restrictions:

> claimant would frequently push and pull with non-dominant upper extremity; occasionally climb; occasionally balance, stoop, kneel, crouch, and crawl;

> frequently handle and finger with dominant upper extremity; must avoid concentrated exposure to hazards such as unprotected heights and dangerous machinery; understand, remember, and carry out simple instructions; work in proximity to, but not coordination with, coworkers and supervisors; work in a low stress environment, which is defined to mean: no fast paced production, only simple work related decisions, few or no changes in the work setting, and only superficial contact with the public.

(Tr. 17-18.) In making this assessment, the ALJ found Plaintiff's statements about the severity of her symptoms not fully credible. (Tr. 20.) At step four, the ALJ concluded Plaintiff did not have the RFC to perform the requirements of her past relevant work as a personnel clerk, parachute rigger, merchandise deliverer, residence leasing agent, and automobile salesperson. (Tr. 24.) Nonetheless, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (Tr. 25.)

**IV.     Plaintiff's Contentions**

Plaintiff challenges the Commissioner's final decision denying benefits on several grounds. Plaintiff first contends that the ALJ failed to give proper consideration to a disability rating decision by the Veterans Administration ("VA"). Second, Plaintiff argues that the ALJ erred in failing to include any limitations for Plaintiff's incontinence impairment, which the ALJ found to be severe. Third, Plaintiff asserts that the ALJ failed to properly consider her physical impairments at step three of the sequential evaluation process.

**A.     VA Rating Decision**

Plaintiff first contends that the ALJ erred in failing to give substantial weight to her VA disability rating of 90%. Plaintiff served in the United States Army from March 2003 to April 2012. (Tr. 40, 221.) Throughout the majority of her military career, Plaintiff was a parachute rigger and jumpmaster. (Tr. 37, 42, 221.) In 2009, she was reassigned as a human resources

4

specialist and subsequently transferred to the Warrior Transition Battalion because of her medical problems. (Tr. 39-40, 221.) In April 2011, it was determined that Plaintiff was unfit for continued military service due to service connected disability. (Tr. 1910.) "[S]ervice connection may be established for a disease or disability that began in military service or was caused by some event or experience in service." (Tr. 1910-11.) The VA assigned Plaintiff a 90% disability rating based upon the following disabilities: (1) 20% disability for lumbar degenerative disc disease; (2) 10% disability for right knee patellofemoral syndrome; (3) 10% disability for left knee patellofemoral syndrome; (4) 50% disability for post-traumatic stress disorder; (5) 40% disability for urinary stress and urge incontinence; (6) 30% disability for hysterectomy; (7) 10% disability for left shoulder strain; and (8) 10% disability for left wrist ganglion cyst.

Although not binding on the Commissioner, disability decisions by other governmental agencies "cannot be ignored and must be considered" by the Commissioner in making a disability determination. SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006). In *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337 (4th Cir. 2012), the Fourth Circuit noted that "both the VA and Social Security programs serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability." *Bird*, 699 F.3d at 343. "Thus, . . . in making a disability determination, the SSA must give substantial weight to a VA disability rating" unless the record clearly demonstrates that a lesser weight is appropriate. *Id.* In certain cases, deviation may be appropriate due to the different standards employed by the agencies in evaluating a claimant's disability. *Bird*, 699 F.3d at 343 ("[B]ecause the SSA employs its own standards for evaluating a claimant's alleged disability . . . an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate.").

This is not a case where the ALJ failed to mention or to explain the consideration given another agency's disability decision. *See, e.g., Allen v. Colvin*, No. 2:12-CV-29-FL, 2013 WL 3983984 (Aug. 1, 2013) (remand required where Commissioner did not indicate weight given to Medicaid determination). Rather, the ALJ carefully considered the VA rating decision and found that lesser weight should be accorded the VA disability ratings in Plaintiff's case because the ratings are based simply upon Plaintiff's diagnosis of and treatment for certain impairments and do not take into consideration any functional limitations (or lack thereof) caused by Plaintiff's impairments. The ALJ explained:

> For example, the claimant's rating for her spinal disorder is based on nothing more than her range of motion, according to the VA's rating regulations and the claimant's VA rating decision. The rating does not take into account the impact of the claimant's impairment on her ability to work or perform the seven exertion requirements of work that the undersigned must consider. Similarly, the claimant has been assigned a 30% rating for a hysterectomy, but there is no evidence before the undersigned that the fact that the claimant has had a hysterectomy in any way contributes to her inability to work or limits her function in any way. Additionally, according to the VA's rating schedule, the claimant has been assigned a rating of 40% for her incontinence because her condition requires the wearing of absorbent materials, which must be changed two to four times a day. Again, this rating is based solely on medical criteria without regard to the functional limitations that stem from the impairment. The same point could be made about the additional components of the claimant's VA rating decision. Virtually none of the rating criteria used is related to functional limitations. As such, the claimant's VA rating, as well as the opinions from the claimant's military doctors regarding her ability to work within the military, has little to no relevance to the disability determination the undersigned must make, and are therefore accorded little weight.

(Tr. 23-24.)

Acknowledging the Fourth Circuit's decision in *Bird*, the ALJ continued, stating:

> The undersigned is mindful of the [Fourth Circuit's] recent holding that a VA disability determination must be accorded "substantial weight" in Social Security disability proceedings. However, in so holding, the [*Bird*] Court also held that "an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate." In the

6

case at bar, the undersigned finds that *such a deviation is appropriate because the VA ratings are . . . not [based] on functional limitations*.

(Tr. 24 (citation omitted) (emphasis added).)

As the ALJ correctly observed, disability under the Social Security Act is dependent upon functional limitations caused by a claimant's impairments. An impairment that does not prevent or limit an individual's ability to work would not support a finding of disability under the Social Security Act. The ALJ's decision to deviate from the VA disability rating of 90% is supported by substantial evidence in the record and was reached upon proper application of the law. Plaintiff's argument that the ALJ erred by failing to give the VA decision substantial weight should, therefore, be rejected.

### B. RFC Determination

Next, Plaintiff argues that the ALJ erred in failing to include in his RFC determination any limitations for Plaintiff's incontinence, which the ALJ found to be a severe impairment. Because an impairment is severe only if it "significantly limits an individual's physical or mental abilities to do basic work," Plaintiff argues that it is logically inconsistent for the ALJ not to have included any limitations addressing Plaintiff's incontinence.

With regard to her incontinence, Plaintiff testified that she has a sudden urge to urinate approximately four times per day during daylight hours and that she wears absorbent pads throughout the day. (Tr. 51.) At the administrative hearing, the ALJ questioned the VE about "the customary tolerances for restroom breaks" in the occupations identified by the VE. (Tr. 68.) The VE responded that employers would typically allow employees in those occupations to take one or two unscheduled restroom breaks per day in addition to any regularly scheduled breaks. (Tr. 69.) Based on this evidence, it was not error for the ALJ to determine that no further limitations were required as a result of Plaintiff's incontinence.

7

### C. Medical Listing 1.02A

At step three of the sequential process, the ALJ was required to determine whether Plaintiff's impairments meet or equal an impairment listed in the regulations. Plaintiff argues that the ALJ failed to consider any listings that her physical impairments may meet or equal. Plaintiff asserts that the ALJ should have considered (1) Listing 1.02 with regard to Plaintiff's knees, obesity, shoulder and ganglion cyst; and (2) Listing 1.04 for her degenerative disc disease, obesity and incontinence.

The burden of proof at step three is on the claimant to show that she meets or equals all the criteria of a listing. *Hunter v. Sullivan*, 993 F.2d 31 (4th Cir. 1992). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). If an impairment does not meet the criteria of a listing, it may nevertheless medically equal the criteria. 20 C.F.R. §§ 404.1525(e)(5), 404.1526. To establish medical equivalence, a claimant must "present medical findings equal in severity to *all* the criteria" for that listing. *Zebley*, 493 U.S. at 531.

Listing 1.02, which addresses the disability caused by major joint dysfunction, requires that a claimant's impairment be

> [c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02.

Where the joint is of the lower extremity, it must also involve "one major peripheral weight-bearing joint (i.e., hip, knee, or ankle)," and "result[] in [the] inability to ambulate

effectively." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02A. "Inability to ambulate effectively" is defined by section 1.00B2b:

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b.

In the case of a joint of the upper extremity, the claimant's impairment must involve "one major peripheral joint in each upper extremity (i.e., shoulder, elbow or wrist-hand), resulting in inability to perform fine and gross movements effectively as defined in 1.00B2c." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02B. Section 1.00B2c provides that "inability to perform fine and gross movements effectively" is

> an extreme loss of function of both upper extremities, i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and

handle papers or files, and the inability to place files in a file cabinet at or above waist level.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00B2c.

An ALJ is required to identify and discuss a listing if there is "ample evidence in the record" to support a finding that the impairment meets or is medically equivalent to one of the listed impairments. *Kelly v. Astru*e, No. 5:08-CV-289-FL, 2009 WL 1346241, at *5 (May 12, 2009). Although Plaintiff points to evidence regarding Plaintiff's use of a cane and difficulty walking, she has failed to identify any evidence establishing the initial diagnostic criteria of either Listing 1.02 or Listing 1.04. For example, Plaintiff does not cite to any evidence of a gross anatomical deformity or medically acceptable imaging showing joint space narrowing, bony destruction or ankylosis of either of her knees or her left shoulder as required by Listing 1.02. Likewise, Plaintiff has not identified any imaging or diagnostic evidence suggesting nerve root or spinal cord compromise as required by Listing 1.04. Due to the absence of any evidence suggesting that Plaintiff could potentially meet the requirements of either of these listings, the ALJ did not commit reversible error by failing to explicitly identify the listings and explain why Plaintiff's impairments do not meet or equal the criteria of the listings.

To the extent Plaintiff is complaining the ALJ failed to consider the effect of her obesity at step three, her argument is without merit. A review of the ALJ's decision reveals that the ALJ did, in fact, consider Plaintiff's obesity in accordance with 20 C.F.R. Part 404, Subpart P, App. 1, § 1.00Q and SSR 02-1p. The ALJ found Plaintiff's obesity to be a severe impairment and at step three explicitly stated that he considered her impairments, both singly and in combination, and based upon a review of the medical evidence, found her impairments do not meet or medically equal any listed impairment. (Tr. 16.) He found that her impairments caused "moderate limitations in activities of daily living, social functioning, and concentration, persistence or pace,

10

with no episodes of decompensation" and that Plaintiff "could perform her activities of daily living, but with some difficulties due to her impairments." (*Id.*) He noted that Plaintiff reported she could take care of her personal hygiene but needed help putting on her boots; that she could not take baths because of difficulties encountered getting into and out of the tub; that she had to be near a bathroom; that she could drive, but only for short distances; and that she could perform light household chores. (*Id.*) The ALJ found these claims to be "generally consistent with the objective medical evidence, which showed that the claimant was diagnosed with degenerative disk disease of the lumbar spine, *obesity*, urinary stress and urge incontinence, patellofemoral syndrome of both knees, left shoulder strain, PTSD, depression, and ganglion cyst." (*Id.* (emphasis added).)

Moreover, the ALJ provided a lengthy analysis of the impact of Plaintiff's obesity on her impairments in addressing Plaintiff's RFC. Specifically, the ALJ stated:

> In accordance with Social Security Ruling 02-1p, the undersigned has considered the impact obesity has on limitation of function including the claimant's ability to perform routine movement and necessary physical activity within the work environment. The claimant's obesity was documented throughout the record. She testified that she was 65 inches tall and weighed 240 pounds. This resulted in a body mass index (BMI) of 39.9. Although the claimant's weight has fluctuated during the relevant time, the amount of fluctuation was not significant to alter these findings. Given the claimant's height and weight, she was considered obese in accordance with the Clinical Guidelines established by The National Institute of Health. Obesity is generally the result of a combination of factors, and the combined effects of obesity with other impairments may be greater than might be expected without obesity. Although the claimant has alleged some general complaints associated with her obesity, there was no documented evidence that the claimant suffered any severe physical limitation due to her weight or that it restricted her ability to ambulate or perform other postural activities. While the claimant has consistently been encouraged to exercise and diet to lose weight and improve her overall health, there was no evidence that she has done so. The claimant has never inquired of, or been recommended to pursue gastric bypass or other surgical interventions for her weight. While the claimant's obesity may exacerbate pain or other symptomologies, there was no indication that it would preclude her from performing the adopted exertional residual functional capacity assessed herein . . . . The records do not reflect any recent significant weight gain,

11

and prior to the claimant's alleged onset of disability, she was able to perform a variety of physical activities, with no reported modifications.

(Tr. 21.)

Plaintiff has offered no evidence demonstrating that her obesity affects her other impairments to such an extent that her impairments, when considered in combination, meet or are medically equivalent to any listing. *See* SSR 02-1p, 2002 WL 34686281 at *5 (Sept. 12, 2002). Accordingly, the ALJ's findings at step three of the sequential evaluation are supported by substantial evidence and based upon a proper application of law.

## **CONCLUSION**

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE-36] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-39] be GRANTED, and the Commissioner's final decision be AFFIRMED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have fourteen (14) days from the date of service to file written objections. Failure to file timely, written objections shall bar an aggrieved party from obtaining de novo review by the District Judge on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 25th day of April 2014.

_____
KIMBERLY A. SWANK
United States Magistrate Judge